UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


J.F.W. (XXX-XX-9303)                        CIVIL ACTION NO. 08-cv-1243

VERSUS                                      JUDGE HICKS

U.S. COMMISSIONER SOCIAL                    MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION


**MEMORANDUM RULING**

**Introduction**

Plaintiff, who has a high school education and several years of work experience as a

security guard or truck driver, applied for disability benefits. She was 41 years old when ALJ

W. Thomas Bundy denied her claim.

The Appeals Council denied a request for review. Plaintiff filed this civil action

seeking judicial review pursuant to 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c) and

the standing order of the district court governing social security cases, the action was referred

to the undersigned for decision and entry of judgment. For the reasons that follow, the

Commissioner's decision to deny benefits will be affirmed.

**Issues on Appeal**

Plaintiff raises three issues on appeal. She argues that: (1) the ALJ's findings that her

mental impairments do not equal a listing are not supported by substantial evidence; (2) the

ALJ erred when he did not request an IQ test; and (3) the ALJ's failure to consider the side

effects of medications is reversible error.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

Plaintiff testified that her longest period of employment was seven years as a truck driver with Tango Transport as an owner-operator who leased to the company. Before that, she drove for other trucking companies. She also had experience working in security, both full-time and part-time. Plaintiff had a commercial driver's license when she was driving trucks, but she chose not to renew it. She testified that she was, at the time of the hearing, looking for work while living with a cousin who does get social security benefits. Plaintiff testified that she had also been in the military, where she worked as a cook specialist. Tr. 262-72.

Samuel Thomas, Ed.D., a licensed psychologist, conducted a consultative examination soon after the hearing. He reviewed Plaintiff's medical records and conducted his own

examination. Plaintiff told Thomas that her main problems included anxiety attacks and panic attacks. Much of this was related to distressing dreams and memories of childhood and domestic abuse at the hands of her father and husband. She was attending outpatient counseling and medication management for treatment of her anxious symptoms.

Plaintiff's handwriting was legible, and she was able to obey simple commands as well as read and obey simple sentences. She understood and followed directions. She was able to carry on a conversation without difficulty, and her speech was intelligible. Plaintiff's thinking was intact, logical, and coherent.

Plaintiff did display a significant (borderline range) weakness in the general fund of accumulated information when compared to adults her age. Plaintiff's concentration was intact. She said the days of the week forward and backward, spelled "world" forward and backward, and was able to subtract seven from 100 six times down to 58 accurately. Plaintiff reported that she reads books of at least fourth-grade level, reads the newspaper, cares for herself, does household chores, and can make change for a dollar. She did display a significant (borderline range) weakness in abstract reasoning when compared to other adults her age.

Dr. Thomas diagnosed post-traumatic stress disorder (provisional), borderline to low average intellectual functioning (provisional), and leg, foot, and hand pain (by history). In summary, he noted that Plaintiff's communication, daily living, and socialization skills appeared generally adequate, even though Plaintiff appeared to be functioning in the

borderline to low average range of overall intellectual abilities. He opined that Plaintiff should be able to perform at least low-level unskilled tasks in a normal, competitive work environment. Tr. 246-49.

Dr. Thomas also completed a statement regarding ability to do work-related activities. He wrote that Plaintiff's borderline to low average intellectual functioning would cause only *slight* limitations in the ability to understand and remember detailed instructions, make judgments on simple work-related decisions, and the like. He found *no* limitation with regard to Plaintiff's ability to understand and remember short, simple instructions or carry them out. He also found that the intellectual functioning would cause only a slight impairment of the ability to interact appropriately with the public, supervisors, and co-workers, as well as to respond appropriately to work pressures and changes in a routine work setting. Tr. 250-52.

Plaintiff's counsel wrote the ALJ after Dr. Thomas issued his report and made a request that Plaintiff be given an IQ test. No particular reason was cited for the request. Tr. 186. The ALJ did not respond to the request, and no IQ test was administered before the written decision issued.

The ALJ reviewed Plaintiff's testimony, medical records, and the report from Dr. Thomas. He afforded "significant weight" to Dr. Thomas' report because Thomas is a licensed psychologist who is recognized as highly qualified in the evaluation of medical issues and disability claims. Tr. 22. The ALJ found that Plaintiff had the residual functional

capacity ("RFC") to perform a full range of work at all exertional levels, but with certain nonexertional levels roughly commensurate with the slight impairments noted by Dr. Thomas with regard to the ability to understand instructions, interact with the public, and the like. Tr. 19-20.

That RFC did not permit Plaintiff to perform her past semi-skilled work, but the ALJ found at step five of the sequential analysis that Plaintiff could perform jobs that exist in significant numbers in the national economy. He observed that Plaintiff had no more than a mild psychological limitation and borderline to low average intellectual functioning, which has little or no effect on the occupational base of unskilled work at all exertional levels. Tr. 22-23.

Plaintiff argues that the ALJ erred when he did not request an IQ test. The ALJ has a duty to fully and fairly develop the record, but the duty "does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." Pierre v. Sullivan, 884 F.2d 799, 802 (5th Cir. 1989). The decision to require such an examination is within the discretion of the ALJ. Id.

The claimant in Pierre was examined by two doctors and a psychologist, none of whom suggested that her intelligence be tested. The claimant pointed to isolated statements in the reports to support a claim of mental impairment. There was other evidence, however, that the claimant was not so impaired. The Fifth Circuit concluded that the isolated

comments about the limits of intellectual functioning, when viewed within the record as a whole, were not sufficient to raise a suspicion that the claimant was mentally retarded. Thus, the ALJ did not err in ordering further testing. Pierre, 884 F.2d at 803. The court noted, however, that it was not a case in which the claimant requested a consultative examination or made a contention that she was mentally retarded.

Plaintiff did not claim in her application or her testimony that she was mentally retarded. Her articulate testimony and the report from Dr. Thomas are strong evidence that Plaintiff may have intellectual deficits but is very unlikely to be mentally retarded. Plaintiff's counsel did ask the ALJ for an IQ test, but he did not then suggest that Plaintiff was mentally retarded. He raised the issue of a lack of IQ test with the Appeals Council (Tr. 257-58), but even then did not make a direct assertion that Plaintiff is mentally retarded. He merely faulted the ALJ for not adequately establishing that Plaintiff was not retarded.

The court finds that, based on the evidence in the entire record, the ALJ did not abuse his discretion or run afoul of his duty to develop the record when he declined to order a consultative IQ test. The diagnosis of borderline intellectual functioning generally indicates an IQ between 70 and 80, and Dr. Thomas's estimate that Plaintiff was in the borderline to low average intellectual functioning range suggests that Plaintiff's IQ was at the upper end or above that range, which is substantially higher than the IQ levels for mental retardation. Dr. Thomas gave no hint that he suspected listing level mental functioning or that an IQ test was necessary to resolve the issue. The testimony about Plaintiff's semi-skilled work

activities, high school education, military service, and current daily activities were also compelling evidence that an IQ test was not necessary to fairly decide whether or not Plaintiff is retarded.

Plaintiff also argues that the ALJ erred when he found her mental impairments do not equal a listing. Plaintiff points to Listing 12.05, which has subsections that permit a finding of disabled if the IQ is 59 or less and onset prior to age 21. Another section of the listing provides for disability if the IQ is between 60 and 70 and there is also a physical or other impairment that imposes an additional and significant work-related limitation of function, together with onset prior to age 22. Plaintiff does not argue for an early onset that would satisfy those elements of the listing, but she argues that she could *equal* the listing because her *current* mental capacity is similar to that in the listing. Plaintiff has the burden at step three to establish that she meets or equals a listing. The evidence of record, noted above, simply does not suggest even a reasonable possibility that Plaintiff has an IQ of such a low level that her current condition equals in severity the conditions set forth in the mental retardation listings.

Finally, Plaintiff argues that the ALJ erred when he did not consider that a side effect of her medication is drowsiness. The ALJ is required to consider side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms. Crowley v. Apfel, 197 F.3d 194, 199 (5th Cir. 1999).

Plaintiff's counsel asked her at the hearing if she had any side effects from medications. Plaintiff answered she had excessive bleeding. On prompting, she added that she also gets dizzy, but she did not know whether it was caused by her medication, and she said she really did not like to talk about it. Plaintiff was asked if she ever had a panic attack when taking her medication. Plaintiff said she did not know because she would go to sleep. Her attorney asked if she took the medicine and it put her to sleep. Plaintiff answered affirmatively. She then said the panic attacks happened mainly at night. Tr. 267-71.

The ALJ characterized this and the other rather disjointed testimony on this issue as follows: "She said she was prescribed medications but she hardly takes them because they cause drowsiness." Tr. 21. Plaintiff was also noted to be taking medications for insomnia. Tr. 21. The ALJ did not further discuss drowsiness. This court has reversed and remanded cases in which there was a significant amount of evidence of a side effect such as drowsiness that was not adequately addressed in the ALJ's decision. This is not such a case. There is some discussion of drowsiness, but it is not clear whether Plaintiff actually complained that she was taking medication that caused drowsiness during the day. The ALJ interpreted her testimony to suggest that she was not taking the medication regularly, but only to treat the panic attacks that occurred mainly at night. Reasonable minds could perhaps differ, but the court finds that the ALJ's interpretation of the somewhat ambiguous testimony, which he observed firsthand and was in the best position to assess and interpret, is a credible evidentiary choice that provides substantial evidence for his decision. There is not adequate

evidence of a side effect to require reversal and remand for further proceedings on that issue.

Accordingly, a judgment affirming the Commissioner's decision will be affirmed.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of September, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE